IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

RODRIGUEZ MORGAN,
*Defendant.*

Criminal Action No. ELH-17-232

**MEMORANDUM**

United States Probation Officer ("USPO") Tiffany Thomas filed a "Request For Early Termination" with regard to the five-year term of supervised release of defendant Rodriguez Morgan. ECF 670 (the "Request"). The government opposes the Request. ECF 676.

No hearing is necessary to resolve the Request. For the reasons that follow, I shall deny the Request.

## I. Background

On June 6, 2017, the defendant was one of eleven individuals charged with conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. ECF 20 (Superseding Indictment). A Second Superseding Indictment followed on August 1, 2017, charging Rodriguez and others in Count One with conspiracy to distribute and possess with intent to distribute heroin, fentanyl, and cocaine, in violation of 21 U.S.C. § 846. ECF 93.

Pursuant to a Plea Agreement (ECF 261), Morgan entered a plea of guilty on April 11, 2018, to Count One of the Second Superseding Indictment. ECF 260. The plea was tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a sentence of 120 months' imprisonment. *Id.* ¶ 8. That proposed sentence corresponded to the congressionally mandated minimum term of ten years of incarceration. *Id.* ¶ 3(a); *see* 21 U.S.C. §§ 846, 841(b)(1)(A).

The Plea Agreement also contained a stipulation of facts. *Id.* ¶ 6. The stipulation reflected that, based on an investigation by the Drug Enforcement Administration, which included intercepted communications, Morgan "was a member of an organization selling heroin in Baltimore." *Id.* According to the stipulation, beginning no later than April 2016, the defendant participated in a conspiracy to "obtain wholesale quantities of heroin and distribute one kilogram or more of that heroin at the street-level" in Baltimore. *Id.* And, the defendant "was an organizer" of the drug trafficking organization. *Id.* A search of the defendant's residence uncovered 440 grams of a carfentanil. *Id.*

The Amended Presentence Report ("PSR," ECF 327) reflects that Morgan had a final offense level of 31, pursuant to the U.S. Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). *Id.* ¶ 23. Although the defendant had a base offense level of 30 (*id.* ¶ 14), he received a four-level enhancement because of his role as an organizer or leader of criminal activity involving five or more participants. *See id.* ¶ 17. But, the defendant also received a three-level downward adjustment for his acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. *Id.* ¶¶ 21, 22.

The PSR indicates that Morgan had four criminal history points and a Criminal History Category of III. *Id.* ¶ 33. In particular, he had three prior Maryland convictions for drug offenses. *See id.* ¶¶ 27, 28, 30. In 2006, the defendant was convicted of possession with intent to distribute cocaine and distribution of cocaine, for which he served two months' incarceration. *Id.* ¶ 27. In 2008, Morgan was convicted of unlawful possession of heroin. *Id.* ¶ 28. He was sentenced to two years of incarceration, with all but two days suspended, and two years of probation. *Id.* In 2010, Morgan was convicted of a violation of probation. *Id.* And, in 2013, the defendant was convicted of possession of a controlled substance and received a suspended sentence of one year of incarceration and one year of probation. *Id.* ¶ 30.

Based on a final offense level of 31 and a Criminal History Category of III, the Guidelines called for a term of imprisonment ranging from 135 months to 168 months. *Id.* ¶ 62. Thus, the Plea Agreement provided for a sentence well below the bottom of the Guidelines.

Sentencing was held on June 26, 2018. ECF 330. At the time of sentencing, Morgan, who was born in January 1986, was 32 years old. *Id.* at 3; *id.* ¶ 43. He is the father of two children. *Id.* ¶ 46. With respect to the defendant's health, the PSR noted that defendant had been shot in the stomach area in 2008. *Id.* ¶ 50. He also "has asthma and has two inhalers." *Id.* Prior to defendant's arrest in this case, defendant had been using heroin and prescription opiates on a daily basis. ¶ 52. He also had a Commercial Drivers License for seven years. *Id.* ¶ 54.

Pursuant to Fed. R. Crim. P. 11(c)(1)(c), the Court imposed the requested 10-year sentence. Again, that sentence corresponded to the statutory mandatory minimum. ECF 327, ¶ 61; *see* 21 U.S.C. § 841(b)(1)(A); *see also* ECF 331; ECF 332. The Court also imposed a term of five years of supervised release. ECF 331. Notably, under 21 U.SC. § 841(b)(1)(A), the Court was required to impose a term of supervision of at least five years. *See also* ECF 327, ¶ 65. The defendant was ordered to surrender for service of his sentence on September 4, 2018. ECF 331.

Defendant had a projected release date of February 25, 2027. *See Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed November 23, 2020). However, on or about December 12, 2024, President Joseph Biden, Jr. issued an Executive Grant of Clemency, commuting the defendant's sentence of confinement. ECF 656. Notably, President Biden left "intact" the term of supervised release imposed by the Court. *Id.* Defendant began his term of supervision on or about December 20, 2024. ECF 670.

## II. Discussion

### A.

USPO Thomas seeks early termination of defendant's supervised release, pursuant to 18 U.S.C. § 3583(e)(1). ECF 670. She notes that Mr. Morgan has "complied with all standard and special conditions." *Id.* at 2. Moreover, he has "successfully completed Diesel Technology training with North American Trade School." *Id.* Further, he "has maintained a stable residence" and obtained "employment with Peterbilt, as a Certified Diesel Technician." *Id.* According to USPO Thomas, the defendant has not sustained any arrests or "noteworthy violations warranting Court notification in the past 12 months . . . ." *Id.* Further, USPO Thomas asserts that defendant "presents no identified risk of harm to the public." *Id.*

As mentioned, the government opposes the request. ECF 676. The government observes that the defendant has only served about 18 months of the five-year period of supervised release imposed by the Court. *Id.* at 1. Moreover, the government reviewed the serious nature of the defendant's criminal conduct. *Id.* at 1. According to the government, over at least a 14-month period, the drug trafficking organization with which defendant was involved, distributed more than one kilogram of heroin, over half a kilogram of cocaine, and various amounts of fentanyl. *See* ECF 93, ECF 261. And, the government states, ECF 676 at 1: "Most notably, Morgan was a leader of the group, often coordinating shop operations and drug supply. . . . When Drug Enforcement Administration agents executed a search warrant on Morgan's residence, they seized nearly half of a kilogram of carfentanyl—one of the most lethal substances unleashed on the drug trade."

Further, the government notes that on December 12, 2024, after the defendant had served just six years of his ten-year sentence, President Biden granted clemency to the defendant, as part

of the President's "nearly 1,500-prisoner commutation issued roughly one month before the end of his presidency." ECF 676 at 1; *see* ECF 656. Nevertheless, the government points out that the defendant was not pardoned, and therefore the terms of his supervised release remain in place. ECF 676 at 2. In the government's view, the USPO "does not set forth an adequate basis for alteration of this Court's sentence." *Id.*

**B.**

Supervised release is "a post-incarceration program intended 'to assist individuals in their transition to community life.'" *United States v. McLeod*, 972 F.3d 637, 641 (4th Cir. 2020) (quoting *United States v. Johnson*, 529 U.S. 53, 59 (2000)). "'[T]he primary goal [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term . . . or to provide rehabilitation to a defendant who has spent a fairly short period in prison . . . but still needs supervision . . . .'" *United States v. Lewis*, 90 F.4th 288, 294 (4th Cir. 2024) (citation omitted). Supervised release "essentially amounts to a *conditional* and *partial* release" from incarceration. *Id.* (emphasis in *Lewis*).

Punishment is not "an appropriate reason" to impose supervised release. *Lewis*, 90 F.4th at 294. Rather, supervised release "fulfills rehabilitative ends, distinct from those served by incarceration." *Johnson*, 529 U.S. at 59. In imposing supervised release, the court must consider, *inter alia*, the defendant's history and characteristics and the need to deter criminal conduct. *Lewis*, 90 F.4th at 295.

The Request implicates 18 U.S.C. § 3583(e)(1). It provides the District Court with authority to grant early termination of supervised release if, in the court's discretion, the relief is appropriate and in the interest of justice. It states:

> The court may, after considering the factors set forth in section 3553(a)(1),(a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) —

> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]

In sum, under 18 U.S.C. § 3583(e)(1), a court, after considering the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), may terminate a defendant's term of supervised release at any time after the expiration of one year of supervision, if the Court is "satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *See United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999).

In assessing whether a defendant has met that burden, a court must consider:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics, 18 U.S.C. § 3553(a)(1);
>
> (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);
>
> (3) the kinds of sentence and sentencing range established for the defendant's crimes, § 3553(a)(4)(A);
>
> (4) pertinent policy statements issued by the United States Sentencing Commission, § 3553(a)(5);
>
> (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and
>
> (6) the need to provide restitution to any victims of the offense, § 3553(a)(7).

Effective November 1, 2025, the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.") were amended as to the imposition, modification, termination, and revocation of supervised release. Of relevance here, the Amendment created a new section, U.S.S.G. § 5D1.4. Section 5D1.4(b) provides:

> (b) EARLY TERMINATION.—Any time after the expiration of one year of supervised release and after an individualized assessment of the need for ongoing supervision, the court may terminate the remaining term of supervision and discharge the defendant if the court determines, following consultation with the government and the probation officer, that the termination is warranted by the conduct of the defendant and in the interest of justice. See 18 U.S.C. § 3583(e)(1).

The Commentary includes factors that a court may want to consider in determining whether early termination is appropriate:

> (B) **Early Termination.**—When determining whether to terminate the remaining term of supervised release under subsection (b), the court may wish to consider such factors as:
>
> (i) any history of court-reported violations over the term of supervision;
>
> (ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);
>
> (iii) the defendant's substantial compliance with all conditions of supervision;
>
> (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;
>
> (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and
>
> (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

Here, defendant committed a very serious offense. *See* 18 U.S.C. § 3553(a)(1). The Plea Agreement contains a stipulation of facts that sets forth the gravity of the crime. ECF 261. As the Plea Agreement reflects, defendant was a leader of a drug trafficking organization that engaged in a conspiracy to distribute a large quantity of dangerous drugs.

To be sure, defendant appears to be doing quite well on supervised release. I join the USPO in applauding defendant's progress. But, supervision undoubtedly has helped guide defendant to the right path and to remain there. *See United States v. Buchanan*, 638 F.3d 448, 451 (4th Cir. 2011) (noting that supervised release is intended "'to improve the odds of a successful transition from the prison to liberty.'") (citation omitted).

Moreover, conduct consistent with compliance is consistent with the expectations and conditions of supervised release. *See*, *e.g.*, *United States v. Rusin*, 105 F. Supp. 3d 291, 292 (S.D. N.Y. 2015) (recognizing that "'full compliance with the terms of supervised release is what is expected of the defendant and does not warrant early termination'") (citation omitted); *Folks v. United States*, 733 F. Supp. 2d 649, 651-52 (M.D. N.C. 2010) (recognizing that although compliance with supervised release conditions is "commendable," it is "what is required . . . and is not a basis for early termination of [defendant's] supervised release"); *United States v. Guillatt*, 2005 WL 589354, *1 (E.D. Pa. 2005) ("The conduct cited by defendant is commendable. However, it is nothing more than what is required under the terms of defendant's probation."). If mere compliance with the terms of the court's supervision were sufficient to merit early termination, "the exception would swallow the rule." *Id.*; *see also United States v. Lohman*, 2007 WL 1430282, *1 (E.D. Wis. 2007) (holding that if simple compliance were sufficient for early termination, "every defendant who avoided revocation would be eligible for early termination").

As noted, defendant has only served about 18 months of his five-year term of supervised release. Congress set the minimum length of the supervision term. *See* 21 U.S.C. § 841(b)(1)(A); ECF 327, ¶ 65. And, at the time of sentencing, I thought five years of supervision was appropriate in light of the offense itself and other factors. I was also mindful of the 10-year length of the term of imprisonment.

As discussed, President Biden subsequently commuted the defendant's 10-year sentence after only six years. So, to the extent that a lengthy sentence would help assure defendant's future compliance with the law, that sentence was cut short. As I see it, it is all the more reason why continued supervision of the defendant is warranted.

The Court's primary focus concerns 18 U.S.C. § 3553(a)(1). Public safety weighs heavily here. But, other factors are also important. They include the nature and circumstances of the underlying offense, the need to promote respect for the law, and the need to deter any future misconduct by defendant. All of these factors lead me to conclude that early termination of supervision is not appropriate at this time.

**C.**

In my view, supervision is crucial to assist defendant in maintaining his status as a law-abiding, productive member of the community. Moreover, supervised release is not unduly burdensome, particularly when I consider the gravity of the crime. Therefore, I shall deny the Request, without prejudice to the right to renew the Request at a later time.

An Order follows.

Date: August 25, 2026

/s/
Ellen L. Hollander
United States District Judge